Lester M. ORMAN, Petitioner,

v.

CAPITOL STEEL AND IRON COMPANY, National Surety Corporation and the State Industrial Commission of the State of Oklahoma, Respondents.

No. 35896.

Supreme Court of Oklahoma.

Oct. 25, 1955.

Claud Briggs, W. Ryan Russell, Oklahoma City, for petitioner.

Looney, Watts, Ross, Looney & Nichols, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

HALLEY, Justice.

This is a proceeding by Lester M. Orman to review an order of the State Industrial Commission denying him compensation on a claim filed against respondent Capitol Steel and Iron Company and its insurance carrier, National Surety Corporation.

On March 25, 1952, petitioner filed his claim for compensation in which he states that on May 28, 1951, while in the employ of Capitol Steel and Iron Company and engaged in the course of his employment, he sustained an accidental injury resulting in some permanent disability to his person unless his condition is improved by further

medical treatment: The injury was caused by an electric shock.

The trial commissioner at the close of the evidence in substance found: On May 28, 1951, petitioner while in the employ of respondent Capitol Steel and Iron Company sustained an accidental injury arising out of and in the course of his employment consisting of an electric shock; that he lost no compensable time from work by reason of said injury and therefore is not entitled to temporary total disability compensation; and further found that the disability from which he is now suffering, if any, is not a result of the accidental injury sustained by him on May 28, 1951; that he sustained no permanent disability by reason of said accidental injury and his claim for permanent disability should be denied and entered an order accordingly, which was sustained on appeal to the Commission en banc.

Petitioner brings the case here to review this award and contends that the Commission erred in refusing to make a finding on the material issue raised as to whether petitioner sustained a temporary partial disability as the result of the electric shock received on May 28, 1951, and that its order denying compensation for permanent disability was prematurely entered. We think there is merit in this contention.

The issue as to temporary partial disability was raised by petitioner's claim filed and presented before the trial commissioner by the evidence adduced. It was again raised by the petitioner on his appeal to the Commission en banc.

On that appeal he specifically requested the Commission to make a finding as to whether petitioner sustained temporary partial disability as the result of the accident occurring in 1951 which the Commission refused to do.

 An injured workman is authorized to recover compensation for temporary partial disability under the provisions of 85 O.S.1951 § 22, subd. 4. The Commission made no finding as to such issue. It simply found petitioner was not entitled to recover temporary total compensation for such injury. The findings under the facts and circumstances of this case are insufficient in that no finding is made on the issue presented as to whether petitioner sustained temporary partial disability as the result of his injury.

The evidence in this respect as testified to by petitioner is in substance as follows: He sustained an accidental injury while in the employ of respondent Capitol Steel and Iron Company upon the date and in the manner stated in his claim. He further testified that on the day he sustained his injury he was engaged in operating an electric grinder; that it had rained on the night previous to the day upon which he sustained his injury and the roof of the building in which he was required to work leaked and the ground on which he was required to work was wet. The next morning when he arrived at work he proceeded to plug in the electric machine and start it. He was standing in a pool of water at the time he started it. The sole of his shoe had a hole in it and as he started the motor he received an electric shock which momentarily rendered him unconscious. When he recovered he found a first aid doctor from respondent's first aid station at his side administering first aid relief. He rested for a while and then returned to work and continued to work for respondent for about six weeks at which time he quit his regular job for the reason he suffered such severe headaches, cramps and pains in his limbs that he was unable to continue at his regular work. He then obtained a pickup truck and contracted to do such light hauling as he was able to do. He was, however, not able to work regularly. His headaches and the pain in his legs became more severe. He kept working at intervals until May 28, 1952, when his condition became worse and he was no longer able to do work requiring any lifting. During the time he was working for himself he earned less than half as much as he received in wages while working for respondent.

The medical evidence is in conflict as to the cause and extent of petitioner's disability.

Dr. D in his written report filed with the Commission, which was admitted in evidence, in substance states: He first saw and examined petitioner shortly after he sus-

tained his injury on May 28, 1951. He obtained a case history from him which as stated by the doctor is substantially as testified to by petitioner herein. He made a personal examination of petitioner and on the basis of the history obtained and his examination concludes:

"This examination was essentially normal with exception of several non-related variations such as pterygium, left eye, and pyorrhea. Mr. Orman did, however, have a pulse rate of 108/minute. He was noted to have a full range of motion of his back and nothing of any great seriousness was discovered to be wrong in this location, although he continues to complain of pain in the lumbar region.

*　*　*　*　*　*

"From this foregoing information, it seems evident that the symptoms experienced by Mr. Orman have been produced by an aggravated latent condition or caused entirely by the severe electrical shock of one year ago. Further, it also seems reasonable to assume that if Mr. Orman does recover completely or in part, it will take considerable and possibly specialized care for an indefinite period of time in the future."

There is also medical evidence to the effect that petitioner's healing period had not ended until he had entirely quit work which was on May 28, 1952. There is also medical evidence to the effect that petitioner's disability was not caused by the electric shock occurring on the date above mentioned but was due to other causes. There is also medical evidence to the effect that as a result of the shock he had sustained a 75 per cent permanent partial disability to his body as a whole.

■ There is, however, evidence sufficient from which the Commission would have been authorized to find that petitioner sustained temporary partial disability as a result of the electric shock received in 1951, and that his healing period has not yet ended, and sufficient to have authorized an award for temporary partial disability.

We therefore conclude that petitioner was entitled to a finding on the issue as to whether he had sustained a temporary partial disability as a result of the injury complained of and because of the refusal to make such finding the order cannot stand.

■ We have many times held that it is the duty of the State Industrial Commission to make specific findings of the ultimate facts responsive to the issues as well as conclusions of law upon which an order is made granting or denying compensation under Workmen's Compensation Law. McCarthy v. Forbes Painting & Decorating Co., 200 Okl. 555, 198 P.2d 212; Fischbach & Moore of Texas, Inc., v. State Industrial Commission, 201 Okl. 170, 203 P.2d 422.

For the reasons above stated the order of the State Industrial Commission denying compensation is vacated for further proceedings in accordance with the views herein expressed.